FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND
2018 MAR 28 PM 3: 42
CLERK'S OFFICE
AT BALTIMORE
BY_____DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| STAR DEVELOPMENT GROUP, LLC and HOPKINS INVESTORS, LLC | * * * | |
| v. | * * | Civil No. RDB-16-1246 (Lead Case) (Consolidated with RDB-17-1956) |
| CONSTRUCTURE MANAGEMENT, INC. and ALLIED WORLD SPECIALITY INSURANCE COMPANY | * * * * | |

\*\*\*\*\*\*\*\*

## MEMORANDUM

Plaintiffs Star Development Group, LLC ("Star") and Hopkins Investors, LLC ("Hopkins") bring this lawsuit against defendants Constructure Management, Inc. ("CMI") and Allied World Specialty Insurance Company ("Allied") (f/k/a "Darwin National Assurance Company") seeking damages for breach of contract. The parties voluntarily participated in arbitration, which resulted in a Final Award ("Award") in favor of CMI. Now pending are plaintiffs' petition to vacate the Award (Civil No. 17-1956, ECF No. 1 (hereinafter "ECF No. 1")) and defendants' motion to confirm the Award and award attorneys' fees (ECF No. 28).[1] The parties have fully briefed the motions, and no oral argument is necessary. *See* Local R. 105.6. For the reasons set forth below, plaintiffs' petition is denied, defendants' motion is granted and the Award is confirmed and attorneys' fees shall be awarded to CMI.

## BACKGROUND

This dispute concerns many claims relating to a construction contract between Star and CMI. On April 8, 2013, Star and CMI entered into a Guaranteed Maximum Price ("GMP") Contract (the "Contract") for the construction of a hotel in Laurel, Maryland (the "Project").

---

[1] Unless otherwise noted, document numbers correspond with the docket of Civil No. 16-1246.

1.

(ECF No. 9, ¶ 9). Plaintiff Hopkins, a Maryland limited liability company, is the property owner, and plaintiff Star, also a Maryland limited liability company, served as Hopkins' construction and development manager. (ECF No. 1, p. 2-4, ¶¶ 1-3, 8). Under the Contract, defendant CMI, a Pennsylvania corporation, was the general contractor for the construction of the hotel. *Id.* at p. 3, ¶¶ 4, 8. CMI obtained payment and performance bonds from Allied, formerly known as "Darwin National Assurance Company," naming Star and Hopkins as multiple obligees. *Id.* at p. 4, ¶ 8. The parties allege numerous claims against each other. Star claims various damages, including delay-related damages incurred due to the Project's late completion. CMI claims the contract balance and various change order payments. Additionally, Star and Hopkins allege payment bond claims against Allied.

Star and Hopkins filed a complaint in the Circuit Court for Howard County in March of 2016, alleging breach of contract against CMI and breach of contract/action on performance bond against CMI and Allied. (ECF No. 2). CMI and Allied removed the case to the District of Maryland on April 27, 2016.[2] (Civil No. 16-1246, ECF No. 1). The case, Civil No. RDB-16-1246, was stayed while the parties voluntarily participated in arbitration pursuant to the arbitration clause in their contract.[3] (ECF No. 12).

A. Arbitration Proceeding

---

[2] A separate action was brought by CMI against Hopkins, Star and one additional defendant seeking damages for alleged fraud relating to the construction project. *Constructure Management, Inc. v. Mukesh Majmudar, Hopkins Hospitality Investors, LLC, Hopkins Investors, LLC, and Star Development Group, LLC*, Civil No. RDB-16-2309. By separate Memorandum and Order that action was dismissed without prejudice.

[3] Section 13.2 of the parties' contract states, "For any claim subject to, but not resolved by mediation pursuant to Section 15.3 of the Star Development Standard AIA Document A201-2007, the method of binding dispute resolution shall be…arbitration pursuant to Section 15.4 of the Star Development Standard AIA Document A201-2007." (ECF No. 1, Ex. A, Contract A102-2007, § 13.2).

2

The arbitration panel ("Panel") was composed of three American Arbitration Association ("AAA") construction arbitrators. (ECF No. 26, Ex. A (hereinafter "Final Award"), p. 17). Each party presented multiple claims for decision by the Panel. (Final Award, ¶ 7). CMI claimed from Star the unpaid GMP contract balance, including amounts for eight disputed change order or added work claims, plus interest. *Id.* CMI's claim totaled $1,797,008.00 before interest. *Id.* Star claimed against CMI various types of delay damages, a list of punchlist/warranty/defective work items, consequential damages, attorneys' fees, costs, and interest. *Id.* Star's claim totaled $4,112,611.00, excluding interest and attorneys' fees. *Id.* Star and Hopkins also claimed that full amount against Allied as third-party claimants.

Hearings were conducted over the course of eight days: April 4-7, 2017 and April 11-14, 2017. (Final Award, ¶ 6). Fifteen witnesses testified, and several hundred exhibits were admitted into evidence. *Id.* The testimony generated a transcript of 2,414 pages. (ECF No. 26, Exs. B, C, D, E, F, G, H, I). After testimony concluded, the parties submitted proposed awards and final Statements of Claims. (Final Award, ¶ 6).

On June 14, 2017, the arbitrators issued a Final Award. (Final Award). The Panel summarized its legal and factual findings in 50 numbered paragraphs spanning 16 single-spaced pages. *Id.* The Panel's Award provides:

1. Claimant CMI is hereby AWARDED against Respondent Star the net amount of One Million Seven Hundred and Sixty-Six Thousand, Thirty-Three Dollars ($1,766,033.00). This amount is due and payable by Star within thirty (30) calendar days of the date of this Award. Interest shall accrue at the applicable Maryland statutory judgment rate after that date.
2. The administrative fees of the AAA totaling $29,400.00 and the compensation and expenses of the Panel totaling $150,928.23 shall be borne by Star. Therefore, Star shall reimburse CMI the sum of $90,164.12 representing the portion of said fees and expenses in excess of the apportioned costs previously incurred by CMI.
3. This Award is in complete resolution of all claims, counterclaims and third-party claims submitted for resolution, as set forth in the Introduction.

4. All claims submitted by any party that are not expressly granted herein are hereby DENIED.

*Id.* at ¶ 1-4. Two of the Panel's specific decisions are at issue in the motions at hand: (1) the Panel's denial of Star's delay damages and (2) the Panel's award of $368,504.18 to CMI for added steel. (ECF No. 1, p. 8).

### B. Panel's Denial of Star's Delay Damages

The Project consisted of two parts: (1) a six-floor tower portion containing the hotel rooms and (2) a one-story area containing the lobby and other common areas. (Final Award, ¶ 12). The original GMP for the Project was $11,541,000, and the original Substantial Completion Date under the Contract was July 26, 2014. *Id.* at ¶¶ 8, 38. The Project was not completed until August 6, 2015, about 376 days late. *Id.* at ¶ 8. Star claimed CMI was solely responsible for this delay, and, as such, claimed liquidated damages and other delay-related damages. *Id.* at ¶ 9. CMI did not claim delay damages, but claimed the delay was excusable and therefore Star was not entitled to delay-related damages. *Id.* at ¶ 10.

After hearing expert testimony, the Panel found CMI and Star were concurrently responsible for the entire project delay, holding CMI responsible for the tower delay and Star responsible for the one-story delay. *Id.* at ¶¶ 11, 16. Thus, the Panel concluded the delay was non-apportionable. *Id.* at ¶ 16. This conclusion implicated General Conditions § 8.3.1.2 of the parties' Contract, which provides,

> Notwithstanding Section 8.3.1.1, or anything to the contrary set forth in the Contract, in no event shall Contractor be entitled to an extension of the Contract Time, nor to recover Extended General Conditions nor to recover any other damages, costs or expenses of any kind as a result of a delay or suspension, if such delay or suspension for which Contractor claims entitlement: (a) was caused in whole or in part, directly or indirectly, by the wrongful acts or omissions or other default of Contractor or any other Contractor Party; and/or (b) is concurrent with a delay caused in whole or in part, directly or indirectly, by the wrongful acts

4

or omissions or other default of Contractor or any other Contractor Party.

(ECF No. 1, Ex. A, Contract A-201-2007, § 8.3.1.1). This provision of the parties' contract would allow Star to recover delay damages even though the delay was concurrent and could not be apportioned, overriding a widely recognized contractual rule. (Final Award, ¶ 18). The Panel, however, found § 8.3.1.2 did not apply to the circumstances at hand because CMI was not required to seek time extensions to avoid delay damages liability. *Id.* at ¶ 19. The Panel concluded Star had waived and abandoned the contractual completion date, meaning CMI's obligation was simply to complete the work within a reasonable time. *Id.* at ¶¶ 20-21. The Panel found CMI had completed its work in such fashion, and accordingly, denied Star's claim for delay damages.[4] *Id.* at ¶ 21. Star and Hopkins now argue the Panel's decision regarding § 8.3.1.2 should be vacated because it constitutes "manifest disregard of the law" and is based on "completely irrational" factual findings.

### C. Panel's Award to CMI for Added Steel

One change order at issue in the arbitration was CMI's extra work claim totaling $368,504.18 for extra costs to construct the structure and exterior of the one-story area. (Final Award, ¶ 30). This claim stemmed from additional structural elements, namely structural steel, added by Star's structural engineer in May and July 2014. *Id.* at ¶ 30. Substantial evidence was submitted relating to this claim. From that evidence, the Panel found the original construction drawings were inadequate for CMI to build the one-story structure because the drawings failed to identify key structural elements and necessary performance requirements. *Id.* at ¶ 32. The Panel

---

[4] The Panel also included alternate bases for its denial of Star's delay damages. (Final Award, ¶¶ 22-24). For example, the Panel concluded that even if § 8.3.1.2 applied to the circumstances, § 8.3.1.2 is unenforceable because it amounts to a penalty. *Id.* at ¶ 23).

5

also found CMI made several attempts to bring this issue to the attention of Star's structural engineer, who was non-responsive or otherwise did not clarify the design intent. *Id.* at ¶ 33.

The sketches in May and July 2014 therefore added significant structural elements that CMI could not have anticipated from the original sketches, which changed the scope of the GMP contract and entitled CMI to the resulting added costs. *Id.* CMI made its claim for the added steel against Star on March 29, 2017. Star contended this claim was waived by CMI because it was untimely and subject to a June 2015 release. The Panel rejected both of Star's arguments.

Concerning Star's timeliness argument, the parties' contract provides with regard to claims by the contractor, "Unless the Contract Documents provide a shorter period, Claims by the Contractor must be initiated within seven (7) days after the occurrence of the event giving rise to such Claim or the Claim is waived." (ECF No. 1, Ex. A, Contract A201-2007, § 15.1.2). The Panel found Star waived the requirements of § 15.1.2, stating, "Given Star's general pattern of failing to follow the contract's administrative processes…we do not find the contractual time limits for change order submissions to be a bar to recovery." (Final Award, ¶ 29).

Concerning Star's release argument, CMI submitted a signed and notarized Release and Waiver of Claims and Mechanic's Liens on June 17, 2015. (ECF No. 1, Ex. S, p. 7). According to Star, CMI waived the added steel claim by signing this release. The Panel rejected this argument as well, although it did not explain its precise reasoning for doing so. Thus, the Panel awarded CMI its claimed damages of $368,504.18, consisting of the actual net costs to complete the structure and exterior of the one-story area, less the remaining balance within the budget for this work. (Final Award, ¶ 35). Star and Hopkins now argue the Panel's decision on the added steel must be vacated because it constitutes "manifest disregard of the law." (ECF No. 1, p. 30).

After arbitration had concluded and the Panel had issued its Award, plaintiffs Star and Hopkins filed another case on July 14, 2017, Civil No. RDB-17-1956, to petition this court to vacate the Award. This subsequent case, 17-1956 was consolidated with the lead case, 16-1246, on August 16, 2017. (Civil No. 17-1956, ECF No. 9). Defendants CMI and Allied then filed a cross-motion to confirm the Award and award attorneys' fees on October 2, 2017. (ECF No. 28). Plaintiffs' petition to vacate the Award (ECF No. 1) and defendants' motion to confirm the Award (ECF No. 28) are now pending.

## STANDARD

Judicial review of an arbitration award is "severely circumscribed." *Apex Plumbing Supply, Inc. v. U.S. Supply Co.*, 142 F.3d 188, 193 (4th Cir. 1998) (describing judicial review of an arbitration award under the Federal Arbitration Act); *see also Downey v. Sharp*, 51 A.3d 573, 585 (Md. 2012) (stating judicial review of an arbitration award under the Maryland Uniform Arbitration Act must be "very narrowly limited"). Both the Fourth Circuit and Maryland courts have described review of an arbitral award as "among the narrowest known at law because to allow full scrutiny of such awards would frustrate the purpose of having arbitration at all—the quick resolution of disputes and the avoidance of the expense and delay associated with litigation." *Apex Plumbing Supply, Inc.*, 142 F.3d at 193; *see also Letke Sec. Contractors, Inc. v. United States Sur. Co.*, 991 A.2d 1306, 1312 (Md. Ct. Spec. App. 2010) (applying the same standard of review under the Maryland Uniform Arbitration Act). Courts generally "defer to the arbitrator's findings of fact and applications of law," and the scope of review of such findings is so narrow that "mere errors of law and fact" are not ordinarily sufficient to vacate an arbitration award. *See Downey*, 51 A.3d at 583-84 (explaining standard of review of arbitral awards under the Maryland Uniform Arbitration Act).

Showing grounds for vacatur requires a petitioner "clear a high hurdle." *Stolt-Nielsen S.A. v. Animal Feeds Int'l Corp.*, 559 U.S. 662, 671 (2010). The grounds for vacating an arbitration award depend on whether the award is subject to the Federal Arbitration Act ("FAA") or the Maryland Uniform Arbitration Act ("MUAA").

Under the FAA, a district court may vacate an arbitration award under four grounds:

(1) where the award was procured by corruption, fraud, or undue means;
(2) where there was evident partiality or corruption in the arbitrators...;
(3) where the arbitrators were guilty of...any...misbehavior by which the rights of any party have been prejudiced; or
(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10. Where a petitioner seeks to vacate an award on the ground that the arbitrators "exceeded their powers," the petitioner must do more than show the arbitrators seriously erred. *Stolt-Nielsen S.A.*, 559 U.S. at 671-72. Instead, "it is only when [an] arbitrator strays from interpretation and application of the agreement and effectively dispense[s] his own brand of industrial justice that his decision may be unenforceable." *Id.* at 671 (citations and internal quotation marks omitted) (alterations in original).

The Fourth Circuit also recognizes "manifest disregard of the law" as a basis for vacating an arbitration award under the FAA where the petitioner shows "(1) the disputed legal principle is clearly defined and is not subject to reasonable debate; and (2) the arbitrator refused to apply that legal principle."[5] *Jones v. Dancel*, 792 F.3d 395, 402 (4th Cir. 2015). Additionally, some courts recognize finding an award is "completely irrational" is a ground to vacate the award

---

[5] Although Fourth Circuit case law recognizes "manifest disregard" as a surviving ground for vacatur under the FAA, it is not clear whether the ground survives as an independent ground for vacatur or as a "judicial gloss" on the enumerated grounds for vacatur set forth in 9 U.S.C. § 10. *See Stolt-Nielson*, 559 U.S. at 672 n. 3; *Wachovia Sec., LLC v. Brand*, 671 F.3d 472, 481-83 (4th Cir. 2012).

8

under 9 U.S.C. § 10(a)(4) if there is "absolutely no support at all in the record justifying the arbitrator's determinations." *See Am. Ins. Mgrs., Inc. v. Guarantee Ins. Co.*, No. 1:07-CV-1615-MBS, 2011 WL 1162374, at *7 (D.S.C. Mar. 29, 2011) (quoting *United Transp. Union Local 1589 v. Suburban Transit Corp.*, 51 F.3d 376, 379 (3d Cir. 1995)).

> Under the MUAA, a court may vacate an award under five grounds:
>
> (1) An award was procured by corruption, fraud, or other undue means;
> (2) There was evident partiality by an arbitrator appointed as a neutral, corruption in any arbitrator, or misconduct prejudicing the rights of any party;
> (3) The arbitrators exceeded their powers;
> (4) The arbitrators...so conducted the hearing...as to prejudice substantially the rights of a party; or
> (5) There was no arbitration agreement.....

MD. CODE ANN., CTS. & JUD. PROC. § 3-224(b). A court may not, however, vacate an award or refuse to confirm an award "on the ground that a court of law or equity could not or would not grant the same relief." *Id.* at § 3-224(c). These statutory grounds have been interpreted more narrowly than the statutory grounds under the FAA. The Maryland Court of Appeals has held that, unlike the FAA statutory grounds, the MUAA statutory grounds for vacatur do not encompass the grounds of "manifest disregard of the law" or "completely irrational." *Downey*, 51 A.3d at 581-82. It is not yet established under Maryland law whether an award subject to the MUAA may be vacated by a reviewing court on the independent grounds it is "completely irrational" or demonstrates a "manifest disregard of the law." *Id.* at 583.

If the award is not vacated, modified or corrected, the court must confirm the award upon application by a party or in denial of a petition to vacate. 9 U.S.C. § 9; MD. CODE ANN., CTS. & JUD. PROC. § 3-226. If the court confirms the award under the MUAA, the court shall enter judgment "in conformity with the order...[and] the judgment may be enforced as any other judgment." MD. CODE ANN., CTS. & JUD. PROC. § 3-228.

## ANALYSIS

Plaintiffs petition this court for vacatur of the Panel's Award under the FAA, arguing the Award constitutes "manifest disregard of the law" and is based on "completely irrational" factual findings. In response, defendants request confirmation of the Panel's Award under the MUAA, arguing no grounds for vacatur exist. Thus, this Court must first address the question of choice of law before a review of that award.

### A. Choice of Law

The parties disagree over whether the Award is subject to the FAA or the MUAA. The governing law is relevant to Star's and Hopkins' alleged grounds for vacatur because, as discussed above, "manifest disregard of the law" and "completely irrational" are recognized as grounds for vacatur under the FAA, but the status of these grounds is less certain under the MUAA.

As an overarching principle, "courts must rigorously enforce arbitration agreements according to their terms." *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) (citations and internal quotation marks omitted). This principle extends to contract provisions selecting state arbitration law instead of the FAA as the governing law in transactions that would otherwise fall within the scope of the FAA. *See Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 57 (1995) (citations and internal quotation marks omitted) ("[P]arties are generally free to structure their arbitration agreements as they see fit. Just as they may limit by contract the issues which they will arbitrate..., so too may they specify by contract the rules under which that arbitration will be conducted."). Courts, however, will presume an arbitration agreement falling within the scope of the FAA is governed by the FAA absent a clear expression of the parties' intent to invoke state arbitration law. *Porter Hayden Co. v. Century Indem. Co.*, 136

F.3d 380, 383-84 (4th Cir 1998). The FAA applies to all written agreements to arbitrate disputes evidencing a transaction "involving interstate commerce." *Southland Corp. v. Keating*, 465 U.S. 1, 12-14 (1984). Thus, in an arbitration regarding a transaction involving interstate commerce, unless the parties clearly and explicitly evidence their intent for state arbitration law to govern, the FAA will govern.

Here, the parties explicitly selected the MUAA to govern the parties' agreement to arbitrate. Although the transaction does involve interstate commerce and therefore falls within the scope of the FAA, the parties' Contract contains an unequivocal selection of state arbitration law, stating, "[I]f the parties have selected arbitration as the method of binding dispute resolution, the Maryland Arbitration Act shall govern Section 15.4." (ECF No. 1, Ex. A, Contract A201-2007, § 13.1). Section 15.4 of the parties' contract is the parties' arbitration agreement. *Id.* at § 15.4. Because the parties clearly articulated their intent to apply state arbitration law instead of the FAA, it is abundantly clear that the Award is subject to the MUAA and not the FAA.[6]

## B. Review of Award

Plaintiffs Star and Hopkins base their petition to vacate the Award on two of the Panel's decisions. First, Star and Hopkins claim the Panel's denial of Star's delay damages must be vacated because it constitutes "manifest disregard of the law" and is based on "completely

---

[6] Star and Hopkins argue the Fourth Circuit has decided the FAA applies to this case. (ECF No. 1, ¶ 15 n. 1). In an Order arising out of a related federal action involving the same contract and the same parties, the Fourth Circuit found an FAA procedural rule governed an interlocutory appeal in federal court "despite the choice-of-law provision that invokes state law." (ECF No. 1, Ex. C, p. 2-3). This Order was limited to a decision on a procedural rule and did not involve the substantive law governing the parties' agreement to arbitrate. *Id.* Review of an arbitration award is a matter of substantive, not procedural, law. *See Southland Corp.*, 465 U.S. at 12-17. Thus, the Fourth Circuit's Order has no bearing on the substantive choice-of-law. Even if, however, the FAA did govern review of the Award, the analysis and result would be the same.

irrational" factual findings. Second, Star and Hopkins argue the Panel's award of $368,504.18 to CMI for its added steel claim must be vacated because it constitutes "manifest disregard of the law." In response, defendants CMI and Allied contend "manifest disregard" and "completely irrational" are not grounds for vacatur under the MUAA. Even if these grounds were recognized under the MUAA, CMI and Allied argue the Panel's Award does not fall within these grounds. Assuming, *arguendo*, that the "manifest disregard of the law" and "completely irrational" standards survive outside of the MUAA's enumerated statutory grounds,[7] there is still no basis to vacate the Award.[8]

### 1. Manifest Disregard of the Law

To vacate an arbitration award on the grounds of "manifest disregard of the law," the petitioner must show "(1) the disputed legal principle is clearly defined and is not subject to reasonable debate; and (2) the arbitrator refused to apply that legal principle." *Jones*, 792 F.3d at 402. Challenging an award on this ground "is not an invitation to review the merits of the underlying arbitration or to establish that the arbitrator misconstrued or misinterpreted the applicable law." *Id.* (citations and internal quotation marks omitted). An award can be vacated under this standard where the award "fails to draw its essence from the contract," such as where "an arbitrator has disregarded or modified unambiguous contract provisions or based an award upon his own personal notions of right and wrong." *Choice Hotels Int'l, Inc. v. SM Prop. Mgmt., LLC*, 519 F.3d 200, 207 (4th Cir. 2008) (citations and internal quotation marks omitted).

---

[7] As previously discussed, the Maryland Court of Appeals has not decided whether the "completely irrational" and "manifest disregard of the law" standards survive outside of the MUAA's enumerated statutory grounds. *Downey*, 51 A.3d at 583. This Court assumes without deciding that the Maryland courts would recognize these independent grounds of vacatur.
[8] Under this assumption, the analysis would be unchanged if the FAA applied to the action.

Star and Hopkins have failed to meet their burden in showing the Panel manifestly disregarded the law. First, Star and Hopkins contend the Panel's refusal to enforce § 8.3.1.2 constitutes manifest disregard of the law. Section 8.3.1.2 allows Star to recover delay damages from CMI even where Star and CMI were concurrently responsible for the delay.[9] (ECF No. 1, Ex. A, Contract A-201-2007, § 8.3.1.1).

The Panel concluded § 8.3.1.2 did not apply to the action because Star, by conduct, had waived and abandoned the completion date. (Final Award, ¶ 19). The Panel found § 8.3.1.2 to be relevant only if CMI was required to seek a time extension to avoid Star's assessment of liquidated damages. *Id.* Because the Panel found Star had waived the contractual completion date, it determined CMI was not required to request a time extension to avoid delay damages. *Id.* at ¶¶ 20-21. Instead, CMI was only required to complete the work in a reasonable time, which it did. *Id.* at ¶¶ 20-21. Thus, the Panel decided there was no delay, and Star was therefore not entitled to delay damages. *Id.* at ¶ 21.

Star and Hopkins unsuccessfully claim that the Panel, in finding Star waived or abandoned the completion date, ignored clear language of the Contract requiring modifications or waivers be in writing.[10] Two Contract provisions are relevant to Star's and Hopkin's argument. First, § 13.4.2 of the Contract states,

---

[9] Star and Hopkins also challenge the Panel's finding of concurrent delay, arguing the Panel's conclusion the delay was concurrent is in "manifest disregard of the law" because it disregards a contract provision. (ECF No. 1, p. 15). Even if the Panel's conclusion on this matter contradicted the parties' contract, it would have no impact on the Panel's Award. The Panel concluded Star was not owed delay damages primarily because the Substantial Completion date had been waived. Although the Panel put forth alternate bases for its denial of Star's delay damages which may implicate the Panel's concurrency finding, the Panel's Award still survives the petition to vacate because its primary reasoning does not constitute "manifest disregard of the law." *See also infra* note 10.

[10] Star and Hopkins also allege the Panel's waiver finding was "completely irrational." This argument is discussed *infra*.

13

> No action or failure to act by the Owner, Architect, or Contractor shall constitute a waiver of a right or duty afforded them under the Contract nor shall such action or failure to act constitute approval of or acquiescence in a breach there under, except as may be specifically agreed in writing.

(ECF No. 1, Ex. A, Contract A201-2007, § 13.4.2). Second, § 1.1 states,

> A Modification is (1) a written amendment to the Contract signed by both parties, (2) a Change Order, (3) a Construction Change Directive or (4) a written order for a minor change in the Work issued by the Architect or the Owner.

*Id.* at § 1.1. Star and Hopkins claim these provisions require a written modification to effectuate a waiver of the contractual completion date. Under Maryland law, however, a party may still waive a contract requirement through conduct "even where the contract specifically states that no non-written modification will be recognized." *Hovnanian Land Inv. Grp., LLC v. Annapolis Towne Ctr. at Parole, LLC*, 25 A.3d 967, 983 (Md. 2011) (citations omitted) ("[A] party may waive, by its actions or statement, a condition precedent in a contract, even when that contract has a non-waiver clause."). Thus, the Panel's determination Star waived the completion date was permissible under Maryland law, even though the Contract contained a no non-written modification clause. Accordingly, the Panel's decision to deny Star's delay damages cannot be vacated on the grounds of "manifest disregard of the law."[11]

Second, Star and Hopkins claim the Panel's decision to award CMI its extra work claim for added steel constitutes "manifest disregard of the law" because CMI waived this claim as it was untimely and subject to a June 2015 release. The Panel rejected Star's untimeliness argument, finding Star had waived the contractual time limits for change order submissions. The Panel also rejected Star's release argument, but did not include its reasoning for this finding.

---

[11] The Panel also put forth alternate bases supporting its decision to deny Star's delay damages. (Final Award, ¶¶ 22-25). Star and Hopkins argue these alternate bases also constitute "manifest disregard of the law." It is unnecessary to reach these other arguments because my review of this finding can be resolved on the basis of the Panel's waiver finding.

14

The Panel's finding of waiver is supported by Maryland law. The Panel was presented with evidence of waiver and found Star followed a "general pattern of failing to follow the contract's administrative processes and failing to respond to change order requests." (Final Award, ¶ 29). This "general pattern" exhibited by Star also reasonably supports the Panel's rejection of Star's defense that CMI's claim was subject to the June 2015 release. Moreover, the Panel was not required to explain its reasoning for this finding. *See United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 598 (1960) ("A mere ambiguity in the opinion accompanying an award, which permits the inference that the arbitrator may have exceeded his authority, is not a reason for refusing to enforce the award. Arbitrators have no obligation to the court to give their reasons for an award."). Therefore, Star and Hopkins have failed to show awarding CMI its claim for added steel constitutes "manifest disregard of the law." Thus, there are no grounds to vacate this finding.

### 2. "Completely Irrational"

Courts that recognize "completely irrational" factual findings as a ground for vacatur require there be "absolutely no support at all in the record justifying the arbitrator's determinations." *See Am. Ins. Mgrs., Inc. v. Guarantee Ins. Co.*, No. 1:07-CV-1615-MBS, 2011 WL 1162374, at *7 (D.S.C. Mar. 29, 2011) (quoting *United Transp. Union Local 1589 v. Suburban Transit Corp.*, 51 F.3d 376, 379 (3d Cir. 1995)). This standard is highly deferential to the Panel's findings, and a court may not refuse to enforce an award merely because the court disagrees with it. *Id.*

Star and Hopkins have failed to meet their burden in showing the Panel made "completely irrational" factual findings. The plaintiffs contend that the Panel's finding Star waived or abandoned the original completion date was "completely irrational" because the Panel was presented with evidence that Star acted as if the original completion date was still in effect.

15

(ECF No. 1, p. 16-17). The "completely irrational" standard, however, does not examine whether the Panel was presented with evidence contrary to its findings; it examines whether there was any evidence at all in the record supporting its findings.

The Panel based its waiver finding on Star's conduct throughout the Project. Most persuasive to the Panel was that Star issued key structural additions to the one-story portion only a few days before the Substantial Completion date. (Final Award, ¶ 20). The Panel also noted, "Star was responsible for a variety of significant design changes that were made very late in the construction process." *Id.* Additionally, "the Panel was also influenced by the fact that CMI submitted in September 2014 a 39-day time extension request, to which Star entirely failed to respond." *Id.* From these pieces of evidence along with "other Star conduct," the Panel concluded "Star had effectively abandoned the time extension process, as well as waived the plainly obsolete July 26, 2014 Substantial Completion date." *Id.*

From this review of the Panel's reasoning, this court can conclude there was evidence of Star's waiver. Whether there was also evidence contrary to a finding of Star's waiver is irrelevant to this review. Because there was at least some support in the record that Star had waived the contractual completion date, the Panel's finding was not "completely irrational" and cannot be vacated. Thus, there are no grounds to vacate the Award, so the Award must be confirmed.

### C. Attorneys' Fees

CMI and Allied request attorneys' fees and costs incurred in this action in obtaining confirmation of the Award. Under the MUAA, in a judgment confirming an arbitration award, "a court may award costs of the petition, subsequent proceedings, and disbursements." MD. CODE ANN., CTS. & JUD. PROC. § 3-228. "Disbursements," as used in this statutory provision,

include attorneys' fees in connection with proceedings to confirm and enforce an arbitration award. *Blitz v. Beth Isaac Adas Israel Congregation*, 720 A.2d 912, 918-19 (Md. 1998). Thus, CMI and Allied are granted attorneys' fees and costs sustained in their defense of Star's and Hopkins' petition to vacate the Award and CMI's and Allied's efforts to confirm the Award. They shall submit memoranda in support of attorneys' fees and costs as required by Local Rule 109.2 of this Court.

## CONCLUSION

For the aforementioned reasons, plaintiffs Star's and Hopkins' petition to vacate the Award (Civil No 17-1956, ECF No. 1) is denied. Defendants CMI's and Allied's motion to confirm the Award and award attorneys' fees (Civil No 16-1246, ECF No. 28) is granted, and judgment is entered accordingly. A separate order follows.

3/28/18
Date

Richard D. Bennett
United States District Judge